**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

MOHAMED ABDELAZIM,              )
                                )
           Plaintiff,           )
                                )
     v.                         )     1:18cv15
                                )
JUDGE THERESA HOLMES SIMMONS,   )
et al.,                         )
                                )
           Defendants.          )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the undersigned United States Magistrate Judge on the Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application") (Docket Entry 1) filed by Mohamed Abdelazim (the "Plaintiff") in conjunction with his pro se Complaint (Docket Entry 2) against Judge Theresa Holmes Simmons ("Judge Simmons"), "DHS/Office of Chief Counsel" (the "Government Attorney"), the Board of Immigration Appeals (the "BIA" and, collectively, the "Government Defendants"), and Christopher Greene ("Greene") (id. at 2-3).[1]  The undersigned will grant the Application for the limited purpose of recommending dismissal of this action.

---

1  Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.  For readability purposes, this Opinion uses standardized capitalization and spelling in all quotations from Plaintiff's materials.

**IN FORMA PAUPERIS PRINCIPLES**

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [i]s not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous[,] . . . (ii) fails to state a claim on which relief may be granted[,] or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

As to the first of these grounds, "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs

lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256-57 (some internal quotation marks omitted). In determining frivolousness, the Court may "apply common sense." Nasim, 64 F.3d at 954.

As to the second ground, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2]

---

2 Although the United States Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation

3

The final ground generally applies to situations in which doctrines established at common law or by the United States Constitution immunize governments and/or government personnel from liability for monetary damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under the Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, including judicial immunity); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy" (internal quotation marks omitted)).

Furthermore, federal courts possess limited jurisdiction, such that they may "exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute."

---

marks and citation omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (affirming dismissal of pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

4

In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). No presumption of jurisdiction applies, Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999); instead, federal courts must determine if a valid jurisdictional basis exists and "dismiss the action if no such ground appears," Bulldog Trucking, 147 F.3d at 352; see also Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter jurisdiction on its own motion.'"); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Facts supporting jurisdiction must appear in the complaint, Pinkley, 191 F.3d at 399, and the party asserting federal jurisdiction bears the burden of "show[ing] that jurisdiction does, in fact, exist," Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (internal quotation marks omitted). The Court may consider subject-matter jurisdiction in assessing frivolity under Section 1915(e)(2)(B)(i). See Cummings v. Rahmati, No. 1:17cv196, 2017 WL 1194364, at *1 (M.D.N.C. Mar. 30, 2017), recommendation adopted, slip op. (M.D.N.C. Apr. 20, 2017).

## BACKGROUND

In his pro se Complaint, Plaintiff asserts claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403

U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (the "FTCA"), against Greene and the Government Defendants for allegedly improper conduct regarding Plaintiff's deportation proceedings. (See Docket Entry 2 at 4.) Construed liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Complaint asserts the following:

Plaintiff hired Greene to represent him in immigration proceedings, including in filing an application for asylum and for relief under the Violence Against Women Act (the "VAWA"). (Docket Entry 2 at 5-7.) Greene has since been disbarred for engaging in sexual relationships with his immigration clients, who he acknowledges "were 'especially vulnerable'" (id. at 8). (See id. at 8-9; see also id. at 16-22 (disciplinary orders and notices).) Among other improper acts during his representation of Plaintiff, Greene failed to file the VAWA application, misappropriated funds Plaintiff paid him, repeatedly missed appointments, deadlines, and court dates, "misled [the Immigration] Court" (id. at 5), lied to Plaintiff, failed to introduce evidence that Plaintiff gathered in support of his immigration petitions, failed to explain the immigration proceedings and their implications to Plaintiff, and "targeted a vulnerable immigrant by providing fraudulent immigration services" (id. at 9). (See id. at 5-7, 9-11, 13.) Greene further failed to appeal an adverse immigration decision from a "final hearing on January 25, 2013," even though he "assured

6

[Plaintiff] that an appeal would be filed" and collected "$11,000 dollars for [the] appeal and [a] work authorization [application]," which he also failed to pursue. (Id. at 6.)[3] Greene additionally failed to inform Plaintiff of a decision granting him "voluntary departure on June 25, 2013[,] for a period not to exceed 120 days." (Id.) Greene also failed to "utilize an interpreter" in communicating with Plaintiff, even though he "was unsure what [Plaintiff] understood" regarding the immigration proceedings. (Id.)

Relatedly, Judge Simmons's "failure to have an interpreter directly ask [Plaintiff] if he, indeed, needed foreign language interpreters" injured Plaintiff, as, "[i]n the absence of a translator/interpreter, [Plaintiff] was guided by his attorney" (id. at 10), who engaged "in ex parte communications [with Judge Simmons] that compromised [Plaintiff's] case . . . and discredited Plaintiff's case in Immigration Court" (id. at 4). "Due to [Greene's] fraud and ineffective counsel, Judge [Simmons] ordered [Plaintiff] removed." (Id. at 5.) More particularly, Greene's "[m]ultiple fabrications led [Judge Simmons] to order [Plaintiff's] removal." (Id.) "The conduct of counsel and the Immigration Court's willingness to believe his fabrications poses a great threat to an immigrant's belief in fairness and integrity in the

---

[3] "This [wa]s the last fee of what amounted to more than $30,000, [Plaintiff's] life's savings." (Id. at 5.)

judicial system." (Id.) Judge Simmons and the BIA further "failed to consider whether" Greene's "ineffective representations . . . accounted for his perceived evasiveness, inconsistencies, or demeanor in [Greene's] statements to [Judge Simmons]" or the "ostensible inconsistencies [that] the BIA rel[ied] upon to sustain [Judge Simmons's] adverse credibility finding." (Id. at 13.) Ultimately, Greene's decision "to lie and [Judge Simmons's] decision to accept his lies . . . as facts, could cost [Plaintiff his] life." (Id.)

In short, "the government failed to protect Plaintiff, and individuals who lacked the proper training and oversight violated Plaintiff's constitutional rights, causing Plaintiff profound physical and psychological injuries." (Id. at 4; see also id. ("argu[ing] that the Immigration Court empowered individual officials to violate the immigrant's constitutional rights").) As such, Plaintiff seeks $45,000 in damages from Greene, as well as "$45,000 for pain and suffering from [Greene] and the United States Government." (Id. at 13.) Plaintiff further seeks an order reopening his immigration proceedings (see id.), which apparently culminated in a BIA decision in or around September 2017 (see id. at 23-24 (presenting notice dated September 28, 2017, of BIA decision)). In that regard, Plaintiff asks that the defendants "be ordered [(i)] to adjust [his] status as Plaintiff believes he is entitled" and (ii) to engage in "fair and unbiased adjudication for

8

application to prevent removal." (Id. at 11.) Finally, Plaintiff asks "the Court to grant an Emergency Stay of Removal." (Id. at 14.)

## ANALYSIS

### I. Bivens Claims

The United States Supreme Court has recognized an implied private right of action for violations of constitutional rights by federal officials in certain circumstances. See Bivens, 403 U.S. at 389, 395-97. To state a Bivens claim, Plaintiff must allege that "a federal agent acting under color of his [federal] authority" violated Plaintiff's constitutional rights. Id. at 389; see also Conner v. Hart, No. 7:10cv17, 2010 WL 149893, at *1 (W.D. Va. Jan. 14, 2010) ("To state a claim under *Bivens*, a plaintiff must allege that a federal officer acted under federal law to deprive plaintiff of a constitutional right."). Moreover, Plaintiff cannot pursue Bivens claims "against officials sued in their official capacity only." Howard v. Federal Bureau of Prisons, No. 99-6708, 198 F.3d 236, 1999 WL 798883, at *1 (4th Cir. 1999) (unpublished); see also Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("*Bivens* did not abolish the doctrine of sovereign immunity of the United States. Any remedy under *Bivens* is against federal officials individually, not the federal government.").

Construed liberally, the Complaint asserts that Greene and the Government Defendants violated Plaintiff's "constitutional [rights] of due process and equal protection of the law." (Docket Entry 2 at 4.) However, Plaintiff selected only the "Official capacity" option in identifying the capacity in which he sued each defendant. (See id. at 2-3 (checking "Official capacity" box, but not "Individual Capacity" box, for each defendant).) Because Plaintiff cannot pursue only official capacity claims under Bivens, his Bivens claims fail as a matter of law. See Howard, 1999 WL 798883, at *1. To the extent, however, that Plaintiff also seeks to assert Bivens claims against Greene and the Government Defendants in their individual capacities, such claims likewise fail, for at least four reasons.

First, as Plaintiff's privately hired attorney (see Docket Entry 2 at 5-6), Greene does not qualify as a federal official for Bivens purposes. See, e.g., Conner, 2010 WL 149893, at *1 ("A private attorney is not is not a federal officer for purposes of a *Bivens* action.") (collecting cases). Moreover, because the Complaint lacks any non-conclusory allegations of a conspiracy between Greene and the Government Defendants (see generally Docket Entry 2), Greene's actions cannot constitute federal action under Bivens. See Pandey v. Freedman, No. 95-1038, 66 F.3d 306, 1995 WL 568490, at *3 (1st Cir. 1995) (unpublished) ("[The plaintiff's] wholly conclusory allegations of conspiracy between [his court-

10

appointed defense counsel] and the United States Attorney are not sufficient to convert the private attorney's actions into federal action for purposes of the Bivens claims."). Thus, Plaintiff's Bivens claim against Greene fails as a matter of law. See, e.g., Conner, 2010 WL 149893, at *1 ("[T]he court finds that [the plaintiff's] attempt to impose liability upon his former defense counsel under *Bivens* is a meritless legal theory and is dismissed as frivolous.").

Second, the Complaint contains no factual allegations against the unnamed Government Attorney. (See generally Docket Entry 2.) Accordingly, it fails to state a claim against this individual. See Iqbal, 556 U.S. at 678. Moreover, prosecutorial immunity shields this Government Attorney from liability for any actions taken in prosecuting Plaintiff's immigration proceedings. See Partovi v. Beamer, Civ. Action No. 10-689, 2011 WL 6300925, at *8 (D. Haw. Dec. 16, 2011) ("If an action was part of the judicial process, the prosecutor is entitled to absolute immunity regardless of whether he violated the civil plaintiff's constitutional rights. [The defendant's] actions taken while prosecuting [the plaintiff's] immigration proceedings are clearly covered by the doctrine of prosecutorial immunity." (citation and emphasis omitted)); see also Butz v. Economou, 438 U.S. 478, 515-17 (1978) (concluding "that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect

11

to such acts," including the "decision to initiate or continue a proceeding," as well as actions taken "in conducting a trial and presenting evidence on the record to the trier of fact").[4] Accordingly, Plaintiff's claim against the Government Attorney cannot proceed.

Third, immunity doctrines also foreclose Plaintiff's <u>Bivens</u> claims against Judge Simmons and the BIA. Plaintiff's allegations regarding these defendants relate entirely to their conduct in adjudicating his immigration proceedings. (<u>See, e.g.</u>, Docket Entry 2 at 5 (asserting injury from "counsel['s decision] to lie and the Immigration Judge's decision to accept his lies . . . as facts," as well as from "the Immigration Court's willingness to believe [counsel's] fabrications").) As such, judicial immunity shields Judge Simmons and the BIA from Plaintiff's <u>Bivens</u> claims, including his request for an order directing the reopening and "fair and unbiased adjudication" (<u>id.</u> at 11) of his immigration proceedings. See <u>Clay v. Osteen</u>, No. 1:10cv399, 2010 WL 4116882, at *3-4 (M.D.N.C. Oct. 19, 2010) (analyzing judicial immunity doctrine in monetary damages and injunctive relief contexts); <u>see also, e.g.</u>, <u>Pearson v. District Attorney Billy W.</u>, No. 5:16-CT-3182, 2017 WL 5163368, at *5 (E.D.N.C. June 26, 2017) ("[J]udges have absolute immunity from a claim for damages arising out of their judicial

---

  4  Generally, the same immunity doctrines apply to federal officials in the <u>Bivens</u> context as apply to state officials in the 42 U.S.C. § 1983 context. See <u>Butz</u>, 438 U.S. at 499-504.

12

actions. Not only are judge[s] immune from claims for monetary damages, they are immune from requests for injunctive relief." (citations omitted)), report and recommendation adopted sub nom. Pearson v. West, No. 5:16-CT-3182, 2017 WL 5163235 (E.D.N.C. Nov. 7, 2017). In addition, the Complaint's conclusory allegations of wrongdoing by Judge Simmons and the BIA lack "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Accordingly, the Court must dismiss Plaintiff's Bivens claims against Judge Simmons and the BIA.

Fourth, Plaintiff cannot pursue a Bivens action under the circumstances of this case. As an implied right of action, a Bivens claim cannot attach in circumstances where "there is any alternative, existing process for protecting the plaintiffs' interests." Mirmehdi v. United States, 689 F.3d 975, 982 (9th Cir. 2012) (internal quotation marks omitted). "'Congress has established a substantial, comprehensive, and intricate remedial scheme in the context of immigration.'" Id. (quoting Arar v. Ashcroft, 585 F.3d 559, 572 (2d Cir. 2009)).[5] In addition, a detained immigrant can pursue habeas corpus relief. See id. (citing Rauschenberg v. Williamson, 785 F.2d 985, 987–88 (11th Cir. 1986)). Given these alternative remedies, Plaintiff cannot bring

---

5 Among other aspects, this administrative scheme "provides for review of final orders of removal." Arar, 585 F.3d at 572.

13

a <u>Bivens</u> claim regarding the defendants' alleged wrongdoings in his immigration proceedings.

## **II. FTCA Claim**

Plaintiff also pursues an FTCA claim for his asserted injuries. Representing a limited congressional waiver of sovereign immunity for injury "caused by the negligent or wrongful act of a [Federal] Government employee acting within the scope of his or her employment," the FTCA "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). Prior to bringing an FTCA claim in court, however, a plaintiff must "'have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.'" <u>Id.</u> at 223 n.1 (quoting 28 U.S.C. § 2675(a)).

The Complaint does not allege that Plaintiff presented his claim to the appropriate agency, let alone that the agency issued a written denial of such claim. (<u>See generally</u> Docket Entry 2.) Accordingly, the Court should dismiss Plaintiff's FTCA claim for lack of jurisdiction. <u>See</u> <u>Bulldog Trucking</u>, 147 F.3d at 352 (explaining that a court must "dismiss the action if no [jurisdictional basis] appears"); <u>Pinkley</u>, 191 F.3d at 399 ("[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint."); <u>Davis</u>, 856 F.2d at 650 (explaining

14

that the party asserting jurisdiction must show that it exists). Ordinarily, such dismissal would occur without prejudice, to permit "Plaintiff [to] file this claim in district court again, if and when the jurisdictional prerequisites have been met." Sheridan v. Reidell, 465 F. Supp. 2d 528, 534 (D.S.C. 2006). However, in defending against an FTCA claim, "the United States is entitled to avail itself of any defenses its agents could raise in their individual capacities." Medina, 259 F.3d at 225 n.2. As explained above, all of the Government Defendants possess absolute immunity regarding Plaintiff's allegations (and Greene does not qualify as a federal agent). Accordingly, the United States possesses absolute immunity to Plaintiff's FTCA claim, rendering futile any exhaustion of jurisdictional prerequisites. Under these circumstances, the Court should dismiss Plaintiff's FTCA claim with prejudice.

## CONCLUSION

Plaintiff's Bivens and FTCA claims fail as frivolous, for failure to state a claim, and/or due to immunity doctrines.

**IT IS THEREFORE ORDERED** that Plaintiff's Application (Docket Entry 1) is **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS RECOMMENDED** that this action be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for being frivolous, failing

to state a claim on which relief may be granted, and seeking monetary damages from immune defendants.

This 2nd day of March, 2018.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**